**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

In re:                              ) Case No. 19-21198-C-7
                                    )
DUMACE LEONARD LEGRAND,             ) Dkt. Control No. SJT-1
                                    )
_____Debtor._____)

**OPINION**

Alan C. Hochheiser and Patrick J. Kane, Maurice Wutscher LLP, Beachwood, Ohio, and Solana Beach, California, for Cavalry Portfolio Services, LLC, and Cavalry SPV 1, LLC.

June D. Coleman, Messer Strickler LTD, Sacramento, California, for Laura McCarthy Hoalst and Winn Law Group.

CHRISTOPHER M. KLEIN, Bankruptcy Judge

Federal Rule of Bankruptcy Procedure 9011(b) exposes "represented parties" to sanctions in appropriate circumstances.

The question is what must a nationwide servicer of defaulted credit accounts show to dodge "represented party" liability for Rule 9011(b) violations committed by its local collection law firm? The answer is: establish, implement, and police an effective program of supervision of local counsel.

After awarding stay violation damages for postpetition wage garnishments (In re LeGrand, 612 B.R. 604 (Bankr. E.D. Cal. 2020)), there remained the problem of factually and legally frivolous briefs and arguments and whether corrective measures should extend to the client of the offending local counsel.

Acting on its own initiative pursuant to Rule 9011(c)(1)(B), this court issued an order describing specific conduct that appeared to violate Rules 9011(b)(2) and 9011(b)(3) and directing

the local counsel and the represented party each to show cause ("OSC") why they did not violate the aforesaid rules.

At a pandemic-delayed hearing, the servicer demonstrated it had created and enforced an effective program to supervise local counsel, which the offender disobeyed and has suffered client-imposed consequences and now faces State Bar discipline.

This decision illustrates how a represented party in the collections arena can protect itself against local counsel who run roughshod over the bankruptcy automatic stay. The subtext is how things go wrong when lawyers stonewall debtor's counsel.

## Procedural History

This court's Order to Show Cause described apparent violations of Rules 9011(b)(2) and (b)(3) that occurred in the course of litigating the stay violation issues.

The Rule 9011(b)(2) violation related to material misstatements of California collection law.

The Rule 9011(b)(3) violation was that factual contentions were untrue and materially misstated key facts to cover up a nineteen-day stonewall of debtor's counsel by local counsel during which time additional wage garnishments occurred.

The parties conceded the violations and focused the hearing on explaining the represented party's structure for responding to bankruptcy filings and what, if any, sanctions are warranted.

## Facts

Nationwide servicer Cavalry Portfolio Services, LLC, ("Cavalry"), performs account recovery and record-maintenance

services for Cavalry SPV I, LLC ("Cavalry SPV"), which is in the
business of purchasing defaulted accounts receivable.

Winn Law Group ("WLG" or "Winn Law") is a collection law
firm retained by Cavalry. It touts itself as "the premier
creditor rights firm in California." <u>LeGrand</u>, 612 B.R. at 607.

The testimony of the Cavalry Vice-President of Legal
Operations and of the Chief Compliance Officer, which this court
believed, described the Cavalry business structure, procedures,
and compliance measures.

When Cavalry SPV acquires accounts, it assigns them to
Cavalry for servicing and recovery.

Servicing and recovery by Cavalry entails, among other
things, retaining law firms for collection activity and filing
claims in bankruptcy cases.

Retained counsel, including Winn Law, are engaged pursuant
to terms of the Cavalry Legal Services Agreement ("LSA"). The LSA
requires retained law firms to adhere to standards set forth in
the Cavalry Legal Network Handbook ("LNH").

Cavalry has a Compliance Monitoring Program designed to
provide continuous review of business processes of service
providers and of retained law firms for adherence to Cavalry
polices and applicable federal, state, and local law.

The Cavalry Compliance Department reviews and analyzes all
customer service and regulatory complaints to identify potential
issues. It also regularly audits performance and compliance by
retained law firms.

When a consumer files a bankruptcy case, Cavalry requires
that active collection stop. The account is recalled and the

retained firm must close its file. The procedures require that a
retained law firm confirm to Cavalry that it has ceased all
activity to collect the recalled account.

Cavalry also retains the services of a vendor that provides
notification of bankruptcy filings. Upon receipt of such a
notice, Cavalry so advises the retained law firm, which must
acknowledge receipt within two business days, stay all activity
to enforce the account, close all proceedings related to the
account, and return the account to Cavalry. If the retained law
firm does not confirm it has closed the account, an "exception
report" is generated, which triggers further communication.

When any proceeding is filed against Cavalry or Cavalry SPV,
the Cavalry LNH requires the retained local firm immediately to
notify Cavalry in-house counsel and provide legal recommendations
and a time line for reply papers.

Similarly, if any proceeding is threatened against Cavalry
or Cavalry SPV, the LNH requires local counsel immediately to
notify Cavalry in-house counsel with legal recommendations.

The Cavalry LNH requires retained law firms daily to log and
report complaints related to Cavalry accounts.

Three failures by Winn Law to comply with Cavalry procedures
led to this proceeding. First, WLG failed to terminate a live
earnings withholding order ("EWO" - California's basic wage
garnishment method) upon being notified of LeGrand's chapter 7
case. Second, WLG failed to respond to LeGrand's counsel.[1] Third,

---

[1]The relevant time line is as follows:

8/22/17 - WLG retained to handle LeGrand account
2/28/19 - LeGrand files chapter 7 case & lists both Cavalry

WLG failed to notify Cavalry of LeGrand's demands.

Cavalry defends against "represented party" liability under Rule 9011(b) by noting that WLG violated the Cavalry LSA and LNH by not terminating the still-live EWO and by not notifying Cavalry of LeGrand's protests and demands. Cavalry argues that, had it known, it would have ensured that WLG respond to LeGrand's counsel and terminate the EWO.

The contract provisions in the Cavalry LNH and LSA, entitle Cavalry to terminate a service provider's contract, recall accounts, require the service provider to provide remediation to consumers for actions resulting in consumer harm, and require the service provider to indemnify it on account of any consumer harm the service provider's conduct caused.

Cavalry was not aware of Winn Law's misfeasance until Cavalry was served with LeGrand's motion for damages that was filed in frustration at being stonewalled by WLG. As soon as Cavalry learned of the live EWO, it was withdrawn. Cavalry

---

```
                        & WLG on Master Address List
        3/1/19  - Cavalry directs WLG to close file
        3/5/19  - WLG acknowledges Cavalry notice & directions
        3/26/19 - Cavalry requests back-up confirmation from WLG
        4/2/19  - WLG confirms account closed & enforcement
                        terminated but does not terminate live EWO
        5/22/19 - LeGrand wages garnished
        6/19/19 - LeGrand wages garnished
        6/26/19 - LeGrand wages garnished
        7/3/19  - LeGrand wages garnished
        7/10/19 - LeGrand counsel faxes WLG demand letter to stop
                        garnishment, return funds, damages & fees
        7/10/19 - LeGrand wages garnished
        7/17/19 - LeGrand wages garnished
        7/26/19 - LeGrand counsel files and serves WLG & Cavalry
                        with motion for damages/fees
        7/29/19 - WLG executes Notice of Termination of live EWO
        8/7/19  - LeGrand wages garnished
```

permanently debarred the WLG partner who ignored LeGrand's counsel, did not terminate the EWO, and did not inform Cavalry.

A secondary consequence to Winn Law is that the punitive damages award triggered a duty to self-report to the State Bar of California the imposition of judicial sanctions in excess of $1,000.00. Cal. Bus. & Prof. Code § 6086(o)(3).[2] While State Bar proceedings are confidential until final, a skilled State Bar Court defense counsel represented WLG at the OSC hearing and reported that WLG did comply with § 6086(o)(3).

## Analysis

The relationship of Civil Rule 11 to Rule 9011 underlies the analysis.

### I. Federal Rule of Bankruptcy Procedure 9011

#### A. Evolution of Rule 9011

As adopted in 1983, Bankruptcy Rule 9011 was modeled on Civil Rule 11, with adjustments for bankruptcy practice.

Meanwhile, growing dissatisfaction with the operation of

---

[2]California Business & Professions Code § 6086(o)(3):

> § 6086. It is a duty of an attorney to do all of the following: ...
> (o) To report to the State Bar, in writing, within 30 days of the time the attorney has knowledge of any of the following: ...
> (3) The imposition of judicial sanctions against the attorney, except for sanctions for failure to make discovery or monetary sanctions of less than one thousand dollars ($1,000).

Cal. Bus. & Prof. Code § 6086(o)(3). Damages under 11 U.S.C. § 362(k) qualify as "judicial sanctions."

Civil Rule 11 in federal civil practice during the 1970s and 1980s culminated in massive revisions in 1993.

Bankruptcy Rule 9011 caught up with Civil Rule 11 in 1997, when it incorporated the 1993 amendments to Civil Rule 11. Since that time Rule 9011 has been a veritable clone of Rule 11.

After 1997, the differences between the rules are that the 21-day safe-harbor period before filing a sanctions motion does not apply to Rule 9011 motions for having filed a petition and that paragraph (c) was reconfigured without substantive change.

One consequence is that Advisory Committee Notes to the 1983 and 1993 Civil Rule 11 amendments are vital to construing Rule 9011 after 1997.[3] Explaining the 1997 amendments, the Bankruptcy Rules Advisory Committee expressly incorporated the Civil Rules Advisory Committee notes to its 1993 amendment.[4]

This convergence of sanctions rules in 1997 means that Civil

---

[3]Fed. R. Civ. P. 11, Advisory Comm. Note to 1983 Amendment; id., Advisory Comm. Note to 1993 Amendment.

[4]The 1997 Advisory Committee Note explains:

This rule is amended to conform to the 1993 changes to F.R.Civ.P. 11. For an explanation of these amendments, see the advisory committee note to the 1993 amendments to F.R.Civ.P. 11.
The "safe harbor" provision contained in subdivision (c)(1)(A), which prohibits the filing of a motion for sanctions unless the challenged paper is not withdrawn or corrected within a prescribed time after service of the motion, does not apply if the challenged paper is a petition. The filing of a petition has immediate serious consequences, including the imposition of the automatic stay under § 362 of the Code, which may not be avoided by the subsequent withdrawal of the petition. In addition, a petition for relief under chapter 7 or chapter 11 may not be withdrawn unless the court orders dismissal of the case for cause after notice and a hearing.

Fed. R. Bankr. P. 9011, Advisory Comm. Note to 1997 Amendment.

Rule 11 precedents under the 1993 version apply to Rule 9011 with greater force than Rule 11 precedents under pre-1993 versions of the rule. E.g., Marsch v. Marsch (In re Marsch), 36 F.3d 825, 829 (9th Cir. 1994); Shalaby v. Mansdorf (In re Nakhuda), 544 B.R. 886, 899-902 (9th Cir. BAP 2016); See generally 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE 3d § 11.01 et seq. ("MOORE'S").

In short, courts interpreting Rule 9011 now have available the rich lore of Civil Rule 11 precedents.

## B. General Provisions of Rule 9011

The presentation to the court of a petition, pleading, written motion, or other paper (whether by signing, filing, submitting, or later advocating) by an attorney or by an unrepresented party makes four categories of certification all of which are to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances. Fed. R. Bankr. P. 9011(b).

### 1. Continuing Duty

The "later advocating" language of the 1993 amendments to Civil Rule 11, as adopted by Rule 9011(b) in 1997, means that each of the certifications creates a continuing duty not to persist in advocating positions contained in those papers after learning that they cease to have merit. Fed. R. Civ. P. 11(b), Advisory Comm. Note;[5] 2 MOORE'S 3d § 11.11[6].

---

[5]The Civil Rules Advisory Committee explained:

The rule [11(b)] applies only to assertions contained in papers filed with or submitted to the court. ... However, a

1    Violation of that continuing duty implicit in the "later

2    advocating" prong or Rule 9011(b) looms large in this case.

3    Frivolous filed written arguments were reiterated during oral

4    proceedings without correction.  While formal retraction may not

5    always be necessary, failure to retract an obsolete certification

6    invites trouble. <u>Sneller v. City of Bainbridge Island</u>, 606 F.3d

7    636, 639-40 (9th Cir. 2010).

8

9                        2. <u>Sanctions</u>

10   Sanctions may be awarded against attorneys, law firms,

11   parties that have directly violated Rule 9011(b), and parties

12   that are "responsible" for a Rule 9011(b) violation. Fed. R.

13   Bankr. P. 9011(c); 2 MOORE'S § 11.23[6][c][i].

14   The extent of the client's involvement in the litigation is

15   a key factor in sanctioning represented parties. 2 MOORE'S

16   § 11.23[6][c][i]; <u>Skidmore Energy Inc. v. KPMG</u>, 455 F.3d 564,

17   567-68 (5th Cir. 2006); <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1117-18

18   (11th Cir. 2001) ("knowing participation").

19

20                  3. <u>Court-Initiated Sanctions</u>

21   The court is entitled, as it did here, to raise Rule 9011(b)

22   violations on its own motion by way of an order to show cause

23   describing specific conduct so long as it does so before any

24

_____

25       litigant's obligations with respect to the contents of these
         papers are not measured solely as of the time they are filed
26       with or submitted to the court, but include reaffirming to
         the court and advocating positions and motions after
27       learning that they cease to have any merit.

28
     Fed. R. Civ. P. 11(b), Advisory Comm. Note. to 1993 Amendment.

voluntary dismissal or settlement of the claims that are at issue. Fed. R. Bankr. P. 9011(c)(1)(B) & (c)(2)(B). <u>Barber v. Miller</u>, 146 F.3d 707, 711 (9th Cir. 1998).

Courts reserve show cause orders for situations that are "akin to contempt." Fed. R. Civ. P. 11(c), Advisory Comm. Note to 1993 Amendment; <u>Utd. Nat'l Ins. Co. v. R&D Latex Corp.</u>, 244 F.3d 1102, 1116 (9th Cir. 2001)("<u>R&D Latex</u>); <u>Barber</u>, 146 F.3d at 711; <u>Nakhuda</u>, 544 B.R. at 899-902.

### 4. <u>Policy of Deterrence</u>

Sanctions are limited to "what is sufficient to deter repetition" of the conduct or comparable conduct by others similarly situated. Fed. R. Bankr. P. 9011(c)(2).[6]

Sanctions imposed on the court's own initiative for Rule 9011(b) violations may be directives of a nonmonetary nature and may also be monetary in the form of a penalty paid into court. Fed. R. Bankr. P. 9011(c)(2).

The sole exception is that represented parties are insulated from monetary awards with respect to <u>legally</u> frivolous claims. Fed. R. Bankr. P. 9011(c)(2)(A).

---

[6]The 1993 Civil Rules Advisory Committee elaborated:

> Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty. However, under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation.

Fed. R. Civ. P. 11, Adv. Comm. Note to 1993 Amendment.

In contrast, represented parties are not insulated from monetary awards for _factually_ frivolous claims. Compare Fed. R. Bankr. P. 9011(b)(2), _with_ _id_. 9011(b)(3).

II. Rule 9011(b) Certifications

The certifications dictated by Rule 9011(b) are: (1) no improper purpose; (2) [legal] contentions warranted by existing law or nonfrivolous argument to revise existing law; (3) factual contentions have, or are likely to have after discovery, evidentiary support; and (4) denials of factual contentions warranted by evidence. Fed. R. Bankr. P. 9011(b)(1)-(4).[7]

Transgressions of any of those certifications may lead to sanctions.

---

[7]The precise statement of Rule 9011(b) is:

(b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ---
(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted under existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information and belief.
Fed. R. Bankr. P. 9011(b).

Cavalry's argument that it is immune from sanctions as a represented party under Rule 9011(b)(2) must be rejected as overstating its protection. Contrary to the Cavalry argument, Rule 9011(c)(2)(A) permits <u>nonmonetary</u> sanctions to be imposed on a represented party that is responsible for a violation of Rule 9011(b)(2), even if <u>monetary</u> sanctions are barred.

Thus, this court is permitted to impose on represented parties nonmonetary sanctions that are designed under Rule 9011(b)(2) to deter repetition of 9011(b)(2) violations by the represented party or by others similarly situated.

In contrast, a represented party such as Cavalry is vulnerable to both monetary and nonmonetary sanctions for violations of Rule 9011(b)(1), (b)(3), and (b)(4).

Here, written filings and oral arguments made to the court by Winn Law offended Rule 9011(b)(2) with <u>legally</u> frivolous claims and Rule 9011(b)(3) with <u>factually</u> frivolous claims.

Cavalry is in the line of fire because the nature of its collection business that necessarily relies on local counsel to implement legal process logically invites an inference that Cavalry, as represented party, sufficiently participates in litigation so as not be at the mercy of local counsel.

As a policy proposition, the exposure of a represented party to Rule 9011 sanctions operates as an incentive for a represented party to supervise and ensure that its lawyers play by the rules. That incentive is particularly salutary for a party whose business pervasively requires engaging local counsel.

However, that which is suggested by logic needs to be confirmed by facts. As the Cavalry business model invites an

1    inference of actual participation, it is incumbent on Cavalry to

2    implement a system designed to minimize the risk that its local

3    counsel might trigger bankruptcy land mines. The OSC hearing

4    evidence reveals that Cavalry has done so.

5

6        III. Count One: Rule 9011(b)(3) Factually Frivolous Claims

7        An attorney's signature, filing, or presentation of a

8    pleading, written motion, or other paper presented to the court

9    constitutes the attorney's certification the allegations and

10   other factual contentions have evidentiary support or, if

11   specifically so identified, are likely to have evidentiary

12   support after a reasonable opportunity for investigation or

13   discovery.  Fed. R. Bankr. P. 9011(b)(3).

14       As noted, the attorney, the law firm, and client all are

15   exposed to sanctions for factually frivolous claims.

16       Winn Law's papers materially misstated facts by omission so

17   as to hide its nineteen-day stonewall of debtor's counsel

18   regarding a stark violation of bedrock bankruptcy law.  The

19   effect of the omission was falsely to imply there was a cause-

20   and-effect relationship between notice that the debtor's wages

21   were being garnished and termination of the offending EWO.

22       When Winn Law received the faxed LeGrand letter on July 10,

23   2019, it did nothing and ignored later communications. WLG's

24   silence ultimately led debtor's counsel on July 26 to file and

25   serve both WLG and Cavalry a motion for damages against them. On

26   July 29, after Cavalry had received service of the debtor's

27   damages motion, WLG terminated the EWO.

28

The nineteen-day stonewall by WLG with knowledge of ongoing continuing stay violation led to at least two additional garnishments. WLG made no attempt to explain itself.

Rather, six times in its papers and three times orally to the court, WLG dodged mention of its nineteen-day stonewall with statements implying it acted promptly.[8]

In context, WLG's statements, exacerbated by "later advocating" orally to the court, regarding facts were untrue and were designed to cover up its delay by misrepresenting facts in violation of Rule 9011(b)(3).

---

[8]Offending representations are:

1. "Winn terminated the levy upon review of the letter from debtor's counsel, prior to receipt of any funds." Declaration of Laura McCarthy Hoalst, ¶ 13.
2. "Upon notice of the employer's enforcement of the earnings withholding order, Winn terminated the levy and instructed the sheriff to release any funds to the debtor." Response to OSC, p.2.
3. "The file remained closed until debtor's counsel, Sharon [Susan] Turner, contacted this office regarding the execution. As of that date, no funds had been received from the sheriff, and a termination of the execution was sent to the sheriff on July 29, 2019." Mem. of Authorities, p.2.
4. "Upon learning of the belated enforcement of the wage levy, Winn issued a termination of the execution on July 29, 2019, instructing any funds to be returned to the debtor." Mem. of Authorities, p.3.
5. "Upon being made aware, Winn terminated the levy." Mem. of Authorities, p.5.
6. "Any delay in issuing the termination was without intent and knowledge that the employer enforced the executed [sic] approximately three months after service." Mem. of Authorities, p.5.
7. "As soon as the respondents learned of the garnishment, they terminated." Hearing Transcript, p.7, *ll.11-12* (Atty Hoalst to court) ["later advocating"].
8. "As soon as we learned about it, we terminated it." Id., p.21, *l.1*. ["later advocating"].
9. "As soon as Winn Law Group became aware of the situation, they terminated." Id., p.9, *ll.*7-8. ["later advocating"].

The actual cause-and-effect relationship was not "as soon as [WLG] became aware, they terminated." Rather, based on evidence presented at the hearing, this court finds that WLG terminated the EWO at Cavalry's insistence after LeGrand's counsel served Cavalry with the motion for damages against Cavalry.

LeGrand's counsel had, before filing the stay violation damages motion, refrained from direct communication with Cavalry in honor of ethical rules against bypassing counsel. But, when WLG's stonewall necessitated the damages motion, Cavalry was served as a party defendant. The Cavalry testimony, which this court believed, was that Cavalry promptly took corrective action.

Under Rule 9011(b)(3), the represented party is exposed to the possibility of monetary and nonmonetary sanctions.

Do the facts add up to "akin to contempt" standard for purposes of Rule 9011(c) as articulated in R&D Latex, 204 F.3d at 1115-18? The answer is yes – intentional misrepresentations of material facts to a court regarding an attorney's own conduct are sanctionable under the "akin to contempt" standard.


IV. Count Two: Rule 9011(b)(2) Legally Frivolous Claims

An attorney's signature on a pleading, written motion, or other paper presented to the court constitutes the attorney's certification that the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extension, modification, or reversal of existing law or the establishment of new law.  Fed. R. Bankr. P. 9011(b)(2).

Although Winn Law specializes in California garnishment law, it materially misstated that law by way of selective citations.

It stated California's general rule of enforcing one EWO at a time without mentioning the support order exception providing for simultaneous enforcement of withholding for support and an EWO. CAL. CODE CIV. PRO. ("CCP") § 706.030(c)(3).

The essence of being a lawyer is to know general rules and the exceptions, especially in the area of the lawyer's expertise.

Instead of citing and addressing the implications of the CCP § 706.030(c)(3) support order exception that was implicit in the Employer's Return reporting that the EWO was <u>not</u> being returned as "ineffective," WLG branded the procedure "not proper." By omitting mention of the CCP § 706.030(c)(3) suppport order exception, WLG perpetrated an exercise in misdirection in this court designed to create the misimpression that the subject garnishments were not WLG's fault.

Winn Law's brief cited only to the general rule in CCP § 706.023 calling for enforcement of one EWO at a time[9] and to CCP § 706.104 requiring the Employer's Return.[10] Then the brief quoted as authority the description of those two sections in a prominent treatise, ALAN AHART, ENFORCING JUDGMENTS §§ 6:1215-16.

WLG omitted to mention that the next treatise section explains simultaneous withholding for support orders under CCP § 706.030(c)(3) as an exception to the general rule of one EWO at a time in CCP § 706.023. ALAN AHART, ENFORCING JUDGMENTS §§ 6:1224-25.

---

[9]CCP § 706.023 renders earning withholding orders "ineffective" in situations not involving a prior support order.

[10]CCP § 706.104 requires the return of an "ineffective" EWO to the levying officer.

Winn Law, on four occasions, blamed some unexplained abnormality about the simultaneous enforcement of withholding for support and EWOs under CCP § 706.030(c)(3).[11] But, there is nothing abnormal about simultaneous withholding for support and for EWO enforcement when there are garnishable funds remaining after mandated support is withheld. Support orders are not rare.

What was improper was WLG telling this court that the procedure was "not proper."

It follows that the claims, defenses, and other legal contentions advocated by Winn Law were not warranted by existing

---

[11]The statements were:

1. "No further action was taken to enforce the judgment after receipt of the notice [of bankruptcy]. This was because of the employer's return indicating that there was already a support order received prior to the Cavalry writ. Under normal procedure, the writ would not have been enforced." Declaration of Laura McCarthy Hoalst, ¶ 7 (emphasis supplied). [In fact, all was correct and consistent with the statute.]

2. "In this case, it appears that the employer starting [sic] enforcing the writ May 22, 2019, enforcing it after the prior order expired or was satisfied. This was not proper procedure as set forth in the Ahart, California Practice Guide." Memorandum of Authorities, p.4, *ll*.13-15 (emphasis supplied). [In fact, it was the proper procedure required by law as described on the next page of the Ahart treatise.]

3.[WLG] "relied on the employer's return that it was ineffective due to an existing levy." Id., p.5, *ll*.11-12. [The Employer's Return, properly, did not say the writ was ineffective and did not say the writ was being returned.]

4. "The employer's return indicated that a previously served levy was pending. Procedurally, the writ should have been returned to the sheriff and would have expired." Response of Winn Law Group, p.2, *ll*.9-11 (emphasis supplied). [Wrong again, as a basic misstatement of law. WLG's response did not take into account that the Employer's Return, of which it admitted having knowledge, noted that LeGrand was subject to a prior order for support and that Cavalry's EWO was not being returned as "ineffective."]

law. Nor has any argument been presented for extension, modification, or reversal of existing law or establishment of new law. In short, they lacked merit and were legally frivolous.

Accordingly, Rule 9011(b)(2) was violated when the papers containing these assertions were filed by Winn Law. In addition, the ensuing continuing duty under the "later advocating" prong of Rule 9011(b) was violated when Winn Law persisted in making the frivolous arguments during the hearing.

Do the facts add up to the "akin to contempt" standard for purposes of Rule 9011(c) as articulated in R&D Latex, 204 F.3d at 1115-18? The answer is yes – intentional misrepresentations to a court regarding the law are sanctionable under the "akin to contempt" standard. This was neither accident nor inadvertence. And Winn Law did not try to retract its unmeritorious argument.

V. <u>Consequences of the Rule 9011(b) Violations</u>

The Rule 9011(b)(2) and Rule 9011(b)(3) violations, all of which are conceded, are serious breaches of duties of candor to a court "akin to contempt" that prompt the question of what would suffice to deter repetition of the conduct or comparable conduct by others similarly situated. Fed. R. Bankr. P. 9011(c)(2).

Winn Law committed the violations. Cavalry was the represented party. Both are eligible for sanctions for WLG's transgressions of Rules 9011(b)(2) and 9011(b)(3).

A. <u>Cavalry as Represented Party</u>

As a matter of law, a court has discretion to sanction a represented party under either Rule 9011(b)(2) or (b)(3).

As previously explained, both monetary sanctions and nonmonetary sanctions are available against Cavalry, as represented party, for the violations of Rule 9011(b)(3) by WLG but only nonmonetary sanctions are available against Cavalry for WLG's violations of Rule 9011(b)(2).

The exercise of discretion to impose monetary or nonmonetary sanctions against a represented party turns on the extent to which Cavalry participated in the litigation and what it has done to discourage the Rule 9011(b) violations.

Since Cavalry's collection business model regularly takes it into bankruptcy cases it constantly is exposed to the risk of stay and discharge violation liability.

To address that structural problem, Cavalry created its LNH to establish ground rules with detailed measures Cavalry requires to be taken in connection with matters of collection, including the implications of bankruptcy. And, Cavalry has established a standard contract for professional services, the Cavalry LSA, that requires all local counsel to adhere to the Cavalry LNH.

The LNH and LSA created by Cavalry appear to suffice as control mechanisms. But, if Cavalry does not actually enforce its rules, then the LNH and LSA could amount to mere window dressing.

The OSC hearing evidence probative of implementation and enforcement establishes that Cavalry, having created an appropriate prophylactic system to assure compliance with basic bankruptcy protections of debtors, actually enforced its system.

Cavalry participated only to the extent of requiring Winn Law to terminate the offending garnishment immediately upon being served with LeGrand's motion for sanction. It thereafter imposed

negative consequences on its offending local counsel.

These facts do not warrant an exercise of discretion to impose sanctions on Cavalry. It is enough deterrence that Cavalry participated in the OSC process in good faith, represented by first-class counsel, and presented a competent defense to show that it has a viable program for supervising local counsel when bankruptcy occurs, that it acted in good faith, and that it actually enforced its rules.

## B. Winn Law as Violator

As to Winn Law, three factors influence the Rule 9011 enforcement analysis of appropriate deterrence.

First, the OSC hearing evidence is that Cavalry reined in WLG under terms of Cavalry LNH and LSA by requiring WLG to shoulder the actual and punitive damages awarded by the court and by debarring the offending WLG partner from further Cavalry work.

Second, the fact that Winn Law finds itself in the cross-hairs of the State Bar of California by virtue of having had to self-report under Cal. Bus. & Prof. Code § 6086(o)(3) and in need of the services of excellent State Bar defense counsel is doubtless something that it would prefer to avoid in the future.

Third, although Winn Law ignored its continuing duty to correct itself, it is unlikely to be so cavalier in the future.

Considering the totality of circumstances and consequences (which might not have ended yet), the requisite function of deterring Winn Law and others similarly situated has been satisfied by the issuance of this opinion without the need to inflict an additional specific penalty by this court.

\*\*\*

A nationwide servicer, as represented party in the collections arena, that pays attention to this opinion ought to leave the decision with the message that the creation of an appropriate structure for responding to bankruptcy situations can protect against rogue local counsel so long as the structure is actually implemented and enforced.

Any lawyer tempted to dissimulate with a court ought to leave this decision with the messages that lack of candor with a court is a bad idea and that the continuing duty of Rule 9011(b) to recede from positions that lack merit has teeth.

Dated: March 29, 2022

_____
United States Bankruptcy Judge